IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES A. THOMAS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1328 |
| | ) | |
| COUNTY OF ALLEGHENY, | ) | Judge Gary L. Lancaster/ |
| PENNSYLVANIA; ALLEGHENY | ) | Magistrate Judge Amy Reynolds Hay |
| CORRECTIONAL HEALTH SERVICES, | ) | |
| INC.; RAMON RUSTIN; CALVIN | ) | |
| LIGHTFOOT; FRED ROSEMEYER; | ) | |
| BRUCE DIXON; DAN ONORATO; | ) | |
| DANA PHILLIPS, | ) | |
|     Defendants. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that defendants' motion to dismiss [Dkt. 13] be denied.

II.    Report

Plaintiff James Thomas, who is currently incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey, has brought this civil rights action against defendants Allegheny County, Ramon Rustin, presently the Warden of the Allegheny County Jail ("ACJ") where plaintiff was previously housed, Calvin Lightfoot and Fred Rosemeyer, who are former wardens of the ACJ, Dan Onorato and John Does 1-25. Plaintiff alleges that his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution have been violated due to the unsanitary, unsafe and overcrowded conditions at the ACJ.[1]

---

[1] Plaintiff and several other inmates who had also been housed at the ACJ originally instituted this suit in June of 2005. See C.A. No. 05-781. Plaintiffs were subsequently transferred from the ACJ to other prisons

(continued...)

Defendants have now filed a motion to dismiss plaintiff's second Amended Complaint arguing that plaintiff's failure to allege that they were personally involved in the conduct that purportedly deprived plaintiff of his constitutional rights is fatal to his claims, and that they are nevertheless entitled to qualified immunity. Defendants also argue that plaintiff has failed to state a claim against Allegheny County as he has not alleged that he was harmed pursuant to a policy or custom.[2]

---

[1] (...continued) across the country which resulted in certain case management problems. Consequently, the court ordered that the cases be severed and directed the Clerk of Court to file the amended complaint, which had been submitted by the plaintiffs on October 3, 2005, at separate civil actions for each plaintiff. See C.A. No. 05-781, Dkt. 93. In that same order, each plaintiff was given thirty days to file a second amended complaint at their respective case numbers raising claims personal to them. Plaintiff submitted a second amended complaint ("Amended Complaint") on January 22, 2008 [Dkt. 8], in which he has largely reiterated the numerous claims contained in the complaints filed at C.A. No. 05-781 regarding the allegedly unsanitary conditions at the ACJ.

[2] Defendants also aver that "Plaintiff's main complaint seems to center on being transferred between units prior to his transport to federal prison," and suggest that, because plaintiff has no liberty interest in remaining in the general population, his claim must be dismissed. Defendants' Brief, pp. 1, 2 [Dkt. 15]. Although plaintiff references the fact that he was transferred between units in his Amended Complaint, as pointed out by plaintiff, none of his claims revolve around a transfer or the fact that he was not housed in the general population. See Amended Complaint, generally. Accordingly, the court has not addressed defendants' argument in this regard. The court also notes that although defendants have listed several other reasons why plaintiff's claims should be dismissed in the motion itself, they are not supported by any argument in the accompanying brief. It therefore appears that defendants have chosen not to pursue those arguments and, thus, the court has not addressed them either. Cf. Mitchell v. Cellone, 389 F.3d 86, 92 (3d Cir. 2004) ("Where an appellant presents an issue in his statement of issues raised on appeal but not in his argument section of his brief, he has abandoned and waived that issue ...") (internal quotations omitted).

The United States Supreme Court has recently held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007) (rejecting the long-adhered to 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In assessing the sufficiency of the complaint, the court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.). The court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. See Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

Defendants initially argue that in order to succeed on a civil rights claim the plaintiff must demonstrate that the defendant was personally involved in the conduct that deprived the plaintiff of his constitutional rights, and that because plaintiff's Amended Complaint is devoid of any allegations of personal involvement, his claims should be dismissed. To support their position, defendants simply state that, "[t]o-wit, Defendant Onorato was not the

3

Chief Executive at the time of Plaintiff's alleged mistreatment." Defendants' Brief, pp. 1, 2. Defendants' statement in this regard is apparently premised on plaintiff's averment in the Amended Complaint that, "[i]n February 2003, [he] was lodged in Allegheny County Jail." Amended Complaint, ¶ 13.

Review of the Amended Complaint, however, demonstrates that in addition to alleging that he was lodged in the ACJ in February of 2003, plaintiff has asserted that he remained there and was subjected to the cited unsanitary conditions "from February 2003 until the first quarter of 2006." Id. at ¶ 81. The court takes judicial notice of the fact that Mr. Onorato took office as the Chief Executive of Allegheny County on January 2, 2004,[3] and, thus, contrary to defendants' assertion, was in that position during much of the period of time that plaintiff was allegedly subjected to the conditions at issue. See Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 273 n.11 (3d Cir. 2007), citing Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000) (Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records).

Nevertheless, it is well settled that local government officials cannot be held liable under a theory of respondeat superior or vicarious liability. Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); Davis v. Carroll, 390 F. Supp. 2d 415, 420 (D. Del. 2005). See Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978). Rather, liability must be predicated on personal involvement in the alleged wrongdoing which may be demonstrated "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

---

[3] See www.onorato2007.com/accomplishments.asp.

Cir. 1988). See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (Finding that in order to impose supervisory liability on a prison official accused of violating the Eighth Amendment's proscription against inhumane conditions of confinement, the official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated on other grounds, Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) (Finding that a supervisory official may be held liable where the supervisor had actual knowledge of or acquiesced in the complained of conduct).

Here, plaintiff has not only described in detail the conditions complained of in the Amended Complaint but he has specifically alleged that the conditions were in force for so long that they became the policies and procedures of the County. Amended Complaint, generally, ¶ 93. Plaintiff has also alleged that defendants Lightfoot, Rosemeyer and Rustin, as the present and past wardens of the ACJ, knew of and were responsible for implementing and maintaining the policies and procedures at the ACJ that caused him injury; that defendants "turned a blind eye" and were deliberately indifferent to the conditions of plaintiff's confinement; and that defendant Onorato "knew about and allowed the policies to exist despite having the authority to require the other defendants to end the policies and procedures." Id. at ¶¶ 9, 12, 16, 23, 70, 79, 83, 90, 92, 94, 96. Plaintiff therefore has sufficiently alleged that the individual defendants not only had knowledge of but acquiesced to the unsanitary conditions at the ACJ and, thus, were personally involved in the alleged constitutional violations.

Defendants also argue that the claims brought against the individual defendants should be dismissed because they are entitled to qualified immunity.

It is well established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether a state official is entitled to qualified immunity, the court must first ascertain whether the facts as alleged demonstrate that the official's conduct violated a constitutional right. Atkinson v. Taylor, 316 F.3d 257, 261 (3d Cir. 2003), quoting Saucier v. Katz, 533 U.S. 194, 201 (2001). Once it has been determined that a constitutional violation has occurred, the Court must then ask whether the right alleged to have been violated was clearly established in the existing law at the time of the violation. Id.

Defendants, without any discussion at all, assert that they are entitled to immunity because, "[a]s discussed above, the allegations in Plaintiff's complaint are insufficient to meet the first prong of this test." Defendants' Brief, p. 4. The only previous discussion in defendants' brief pertaining to the individual defendants revolves around plaintiff's purported failure to allege defendants' personal involvement in the unlawful conduct. Notwithstanding the fact that whether or not the defendants were personally involved in the challenged conduct is a different question than whether the conduct violated a constitutional right, the court has already found that plaintiff has more than adequately pled that the defendants were personally involved in the conduct at issue and, thus, defendants' argument in this regard does not provide the basis for finding that they are entitled to qualified immunity.

Defendants also argue that the claims against Allegheny County should be dismissed because plaintiff "lacks proof of any incident which was caused by an existing,

6

unconstitutional municipal policy which can be attributed to a municipal policymaker." Defendants' Brief, p. 4.

The question at this juncture, however, is not whether plaintiff has offered sufficient proof of his claims but whether, accepting the allegations in the complaint as true, he has pled sufficient facts to state a claim for relief that is plausible on its face which, in turn, would afford him the opportunity to offer evidence in support thereof at the appropriate time. Oatway v. American International Group, Inc., 325 F.3d at 187.

This having been said, it is nevertheless true, as defendants have suggested, that a municipality may not be held liable under § 1983 merely because its employees have acted unconstitutionally. Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997). See Monell v. New York City Dept. of Social Services, 436 U.S. at 658.

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Commissioners of Bryan County v. Brown, 520 U.S. at 403-04 (citations omitted). Liability based upon an unlawful custom will be found "where relevant policy makers within the municipal unit had notice or knowledge of a risk of deprivation of rights through a pattern of prior deprivations and acted with 'deliberate indifference' to the known risk." Bastile v.

7

Elizabethtown Area School District, 61 F. Supp. 2d 392, 405-06 (E.D. Pa. 1999), citing Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996), cert. denied, 519 U.S. 1151 (1997).

Here, as previously discussed, plaintiff has alleged in the Amended Complaint that the unsanitary and unsafe conditions at the ACJ were in force for so long that they became the policy of the ACJ and the County; that defendants implemented, maintained and otherwise knew of the policies at issue; and that defendants nevertheless disregarded the unconstitutional conditions and the risk posed to plaintiff. Amended Complaint, ¶¶ 9, 10, 12, 16, 23, 70, 79, 83, 89-96. It therefore appears that plaintiff has alleged facts which, if proven, would demonstrate the existence of a municipal custom that was approved by County decision-makers who knowingly disregarded the fact that the customs complained of were unlawful. As such, plaintiff has sufficiently stated a claim against the County and defendants' motion in this regard is properly denied.

Further, to the extent that defendants have argued that plaintiff's claims against the County should be dismissed because plaintiff has failed to allege that he has suffered any harm due to the alleged conditions at the ACJ or because of any policy or custom, it is well settled that a prisoner need not suffer physical injury in order to make out a conditions of confinement claim or a deliberate indifference claim under the Eighth Amendment. See, e.g., Farmer v. Brennan, 511 U.S. at 845, quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923) (Holding that a prisoner need not suffer physical injury before obtaining relief because "'[o]ne does not have to wait the consummation of threatened injury to obtain preventative relief'"); Helling v. McKinney, 509 U.S. 25, 33-34 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition. . . . Courts . . . have plainly

8

recognized that a remedy for unsafe conditions need not await a tragic event"). Thus, because plaintiff need only show that a constitutional violation occurred and not that he has been physically injured, his failure to plead that he has been harmed does not provide the basis for dismissing his claims.

For these reasons, it is respectfully recommended that defendants' motion to dismiss [Dkt. 13] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

*/ s/  Amy Reynolds Hay*
United States Magistrate Judge

Dated: 3 November, 2008

cc:	James A. Thomas
#07754-068
FCI Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640

All Counsel of Record by NEF